FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 03, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

RHONDA DANELLE PEDERSEN,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No.  1:17-CV-03102-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 12, 14. Plaintiff Rhonda Danelle Pedersen brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C §§ 1381-1383F.  After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

Motion for Summary Judgment and **DENIES** Ms. Pedersen's Motion for Summary

Judgment.

## I. Jurisdiction

Ms. Pedersen filed her application for supplemental security income on

August 27, 2013. AR 154-59.  Her alleged onset date is January 1, 2008. AR 154.

Her application was initially denied on October 30, 2013, AR 94-97, and on

reconsideration on January 23, 2014, AR 101-02.

Administrative Law Judge ("ALJ") Cheri L. Filion held a hearing on June 3,

2015. AR 31-72. On October 6, 2015, ALJ Filion issued a decision finding Ms.

Pedersen ineligible for supplemental security income. AR 13-25. On April 5, 2017,

the Appeals Council denied her request for review, making the ALJ's ruling the

"final decision" of the Commissioner.

Ms. Pedersen timely filed the present action challenging the denial of

benefits on June 5, 2017. ECF No. 3. Accordingly, Ms. Pedersen's claims are

properly before this Court pursuant to 42 U.S.C. § 405(g).

## II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant shall be determined to be

under a disability only if the claimant's impairments are of such severity that the

claimant is not only unable to do his previous work, but cannot, considering

claimant's age, education, and work experience, engage in any other substantial

gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) &

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process

for determining whether a claimant is disabled within the meaning of the Social

Security Act.  20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v.*

*Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial

gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b).  Substantial gainful

activity is defined as significant physical or mental activities done or usually done

for profit.  20 C.F.R. §§ 404.1572 & 416.972.  If the claimant is engaged in

substantial activity, he or she is not entitled to disability benefits.  20 C.F.R. §§

404.1571 & 416.920(b).  If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination

of impairments, that significantly limits the claimant's physical or mental ability to

do basic work activities.  20 C.F.R. §§ 404.1520(c) & 416.920(c).  A severe

impairment is one that has lasted or is expected to last for at least twelve months,

1  and must be proven by objective medical evidence.  20 C.F.R. §§ 404.1508-09 &

2  416.908-09.  If the claimant does not have a severe impairment, or combination of

3  impairments, the disability claim is denied, and no further evaluative steps are

4  required.  Otherwise, the evaluation proceeds to the third step.

5      Step three involves a determination of whether any of the claimant's severe

6  impairments "meets or equals" one of the listed impairments acknowledged by the

7  Commissioner to be sufficiently severe as to preclude substantial gainful activity.

8  20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926;

9  20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings").  If the impairment meets or

10  equals one of the listed impairments, the claimant is *per se* disabled and qualifies

11  for benefits.  *Id.*  If the claimant is not *per se* disabled, the evaluation proceeds to

12  the fourth step.

13      Step four examines whether the claimant's residual functional capacity

14  enables the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(e)-(f)

15  & 416.920(e)-(f).  If the claimant can still perform past relevant work, the claimant

16  is not entitled to disability benefits and the inquiry ends.  *Id.*

17      Step five shifts the burden to the Commissioner to prove that the claimant is

18  able to perform other work in the national economy, taking into account the

19  claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f),

20  404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).  To meet this

burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.   Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and accordingly, are only briefly summarized here. Ms. Pedersen was 41 years old when she filed her application. AR 154. Ms. Pedersen attended school through seventh grade, and she does not have her GED. AR 43. She has previously worked as a display merchandiser and a gambling attendant. AR 23, 43.

//

# V.    The ALJ's Findings

The ALJ determined that Ms. Pedersen was not under a disability within the meaning of the Act since August 27, 2013, the date the application was filed. AR 13-25.

**At step one**, the ALJ found that Ms. Pedersen had not engaged in substantial gainful activity since August 27, 2013, her application date (citing 20 C.F.R. § 416.971 *et seq.*). AR 30.

**At step two**, the ALJ found Ms. Pedersen had the following severe impairments: posttraumatic stress disorder (PTSD), personality disorder, depressive disorder, seizure disorder as of December 30, 2013-provisional, and rule out substance abuse (citing 20 C.F.R. § 416.920(c)). AR 15-16.

At **step three**, the ALJ found that Ms. Pedersen did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 17-18.

At **step four**, the ALJ found Ms. Pedersen had the following residual functional capacity.  She can perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform simple, repetitive tasks and some well-learned tasks; she can engage in superficial social interactionl and she is limited to no work around dangerous heights and machinery, as well as no ladders, ropes, or scaffolds. AR 18.

1    The ALJ determined that Ms. Pedersen is unable to perform any past

2    relevant work. AR 23.

3    At **step five**, the ALJ also found that in light of her age, education, work

4    experience, and residual functional capacity, there are jobs that exist in significant

5    numbers in the national economy that Ms. Pedersen can perform. AR 24. These

6    include hand packager, laundry laborer, and production assembler. *Id.*

### VI.    Issues for Review

8    Ms. Pedersen argues that the Commissioner's decision is not free of legal

9    error and not supported by substantial evidence. Specifically, she argues the ALJ

10   erred by: (1) improperly assessing the opinion evidence; (2) failing to assess Ms.

11   Pedersen's obesity; and (3) improperly discrediting Ms. Pedersen. ECF No. 12 at

12   3.

### VII.   Discussion

### A. The ALJ did not err in the assessment of the opinion evidence.

15   The Ninth Circuit has distinguished between three classes of medical

16   providers in defining the weight to be given to their opinions: (1) treating

17   providers, those who actually treat the claimant; (2) examining providers, those

18   who examine but do not treat the claimant; and (3) non-examining providers, those

19   who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th

20   Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31. The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his or her] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted).

### a. Amelia Rutter, ARNP

Nurse Rutter provided a medical report on December 3, 2014. AR 426-27. She stated that she had treated Ms. Pedersen from September 19, 2013 through December 3, 2014. AR 426. Nurse Rutter opined that Ms. Pedersen would miss four or more days per month unless she had better control of her seizures. AR 427. The ALJ gave little weight to this opinion because it was inconsistent with the record, Nurse Rutter cites no objective evidence to support her opinion, and because Ms. Pedersen's seizures occurred under the influence of alcohol, she later

tested positive for methamphetamine and cannabis, and her seizure medication was at sub-therapeutic levels. AR 22.

An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602-603 (9th Cir. 1999). Ms. Pedersen was evaluated under laboratory conditions for six days and seven nights in February 2015, and she experienced no seizures and no epileptiform pattern. AR 511. Her EEG and an MRI of her brain were normal. *Id.*

"[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Nurse Rutter does not provide or cite to objective evidence to support her findings, and in fact, the only objective findings to which Nurse Rutter refers are normal EEG and MRI results. AR 426. Nurse Rutter does not address Ms. Pedersen's substance or alcohol abuse, a factor the record shows and even Ms. Pedersen acknowledged have a direct effect on her seizures. AR 52-55, 225, 329, 342, 381, 489, 546. Nurse Rutter also does not account for the improvement Ms. Pedersen experiences when consistently taking her medication or increased seizure activity with poor medicine compliance. AR 738, 746.

1    The ALJ's reasoning for providing little weight to Nurse Rutter's opinion is

2    supported by the record. When the ALJ presents a reasonable interpretation that is

3    supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*

4    *v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Court "must uphold the

5    ALJ's findings if they are supported by inferences reasonably drawn from the

6    record." *Molina*, 674 F.3d 1104, 1111.

7        **b.  M. Gabriela Mondragon, MSW**

8        Ms. Mondragon provided a mental source statement regarding Ms. Pedersen

9    on January 12, 2015. AR 428-31. Ms. Mondragon opined that Ms. Pedersen had

10   multiple marked limitations, that she would be off-task 21-30% of the time, and

11   she would miss two days per month of work. AR 428-30. She also stated that Ms.

12   Pedersen "has a history of struggling with traumatic brain injury per her report."

13   AR 431. The ALJ gave little weight to this opinion because it is inconsistent with

14   the record and that her notes, specifically Ms. Pedersen's report of traumatic brain

15   injury, suggest that she relied primarily on Ms. Pedersen's self-reporting. AR 22-

16   23.

17       The notes to support Ms. Mondragon's findings are sparse. Check-box form

18   statements may be given less weight when they are conclusory in nature and lack

19   substantive medical findings to support them or they are inconsistent with the

20

underlying medical records. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).

Additionally, the limited notes strongly indicate Ms. Mondragon was influenced by Ms. Pedersen's self-reporting. It is unambiguous that Ms. Mondragon relied on the diagnosis of traumatic brain injury from Ms. Pedersen and not an objective source, as Ms. Mondragon wrote "per her report" in her notes. AR 431. An ALJ may discount a treating provider's opinion if it is based largely on the claimant's self-reports and not on clinical evidence, and the ALJ finds the claimant not credible. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

Ms. Pedersen argues for a different interpretation of the ALJ's findings, but the Court's duty is to determine if the ALJ's finding were rational. When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d at 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111. In this case, they are.

### c. Lay witness testimony

Also in the record is lay witness testimony from Ms. Pedersen's friends, Penny Bailey and Tracey Juarez, and her son, Brian Harrison Jones, Jr. AR 216-218. Each of the lay witnesses stated that they had witnessed Ms. Pedersen have seizures, as well as the after-effects of the seizures. *Id.* The ALJ gave little weight

to these statements because they are "vague and unreliable." AR 22. The ALJ notes

that it is unclear when the witnessed seizures occurred, which undermines the

reliability of the statements, and that the reports are inconsistent with the normal

lab findings. *Id.* The ALJ also noted that the lay witnesses do not mention Ms.

Pedersen's alcohol and substance abuse. *Id.*

The opinion testimony of the lay witnesses falls under the category of "other

sources." "Other sources" for opinions include non-medical sources. 20 C.F.R. §§

404.1513(d), 416.913(d). An ALJ is required to "consider observations by non-

medical sources as to how an impairment affects a claimant's ability to work."

*Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). Non-medical testimony

can never establish a diagnosis or disability absent corroborating competent

medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). An ALJ

is obligated to give reasons germane to "other source" testimony before

discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir.1993).

The ALJ provided three distinct reasons for not accepting these opinions.

The strongest of these is that the statements are inconsistent with the normal lab

findings, such as EEG, MRI, and clinical observations. An ALJ may properly

discredit lay witness testimony that is inconsistent with medical evidence. *Bayliss*,

427 F.3d at 1218.

1    **B. The ALJ did not err at step two by failing to assess Ms. Pedersen's**

2        **obesity.**

3        At step two in the five-step sequential evaluation for Social Security cases,

4    the ALJ must determine whether a claimant has a medically severe impairment or

5    combination of impairments. An impairment is found to be not severe "when

6    medical evidence establishes only a slight abnormality or a combination of slight

7    abnormalities which would have no more than a minimal effect on an individual's

8    ability to work." *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988) (quoting

9    SSR 85-28). Step two is generally "a de minimis screening device [used] to

10   dispose of groundless claims," and the ALJ is permitted to find a claimant lacks a

11   medically severe impairment only when the conclusion is clearly established by the

12   record. *Webb v. Barnhart*, 433 F. 683, 687 (9th Cir. 2005) (quoting *Smolen v.*

13   *Chater*, 80 F.3d 1273, 1290 (9th Cir.1996)).

14       The record does establish that Ms. Pedersen is clinically obese. AR 746.

15   However, Ms. Pedersen must demonstrate there was error in the failure to consider

16   her obesity *See Burch v. Bayliss*, 400 F.3d 676, 683 (9th Cir. 2005). Rather, Ms.

17   Pedersen lists postural activities not precluded by her her residual functional

18   capacity. ECF No. 12 at 15. She must do more than this. A claimant is required to

19   point to evidence of functional limitations in the record that the ALJ ignored and

20

would have been impacted by her obesity to show harm. *Burch v. Bayliss*, 400 F.3d 676, 683 (9th Cir. 2005).

**C. The ALJ did not err in the determination of Ms. Pedersen's credibility.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti,* 533 F.3d at 1039. First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996). Here, the ALJ found that Ms. Pedersen's impairments could reasonably be expected to produce limitations, but Ms. Pedersen's statements

regarding the intensity, persistence, and limiting effects are not entirely credible. AR 18. The ALJ provided multiple reasons for this finding. AR 18-22.

First, the ALJ detailed the inconsistences regarding Ms. Pedersen's seizures. These inconsistencies include: failure to list seizures as disabling in her initial request for disability or follow up requests for additional information (AR 173, 183-84); inconsistent reporting on how long she has experienced seizures (AR 49, 516); and a lack of evidence to support her testimony that she had a witnessed seizure at the hospital in December 2013, despite the ALJ's decision to leave the record open to allow evidence to be introduced to support her claim (AR 19). The ALJ also detailed inconsistent reporting on the frequency of seizures. AR 19, 494, 516, 739, 744.

The ALJ also noted that Ms. Pedersen had a lack of treatment for her seizures. Ms. Pedersen alleged she had she didn't know State assistance would cover it, but it is within the ALJ's discretion to determine if this is a reasonable explanation. "Unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's [] testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Moreover, even if she was unable to receive treatment, the evidence shows that she continued to drink alcohol, despite having a seizure while intoxicated with alcohol in December 2013. AR 384, 489, 545-46, 648. The ALJ also pointed to Dr. Esnard's finding that Ms. Pedersen's medication

was at sub-therapeutic levels and he suspected poor medication compliance. AR 746. This is significant because the record supports the ALJ's finding that when compliant, medication improves Ms. Pedersen's condition. AR 738, 746.

Likewise, Ms. Pedersen did not demonstrate adequate compliance with her mental health medications. Dr. Harrison noted in August 2013 that Ms. Pedersen's mental condition, notably agitation, was secondary to withdrawal from benzodiazepines, but that she calmed after restarting her medication. AR 327. This lack of compliance led to inpatient psychiatric treatment on this occasion. *Id.*

The ALJ also detailed how objective findings were inconsistent with Ms. Pedersen's reporting. AR 19. In particular, Ms. Pedersen spent six nights and seven days in a seizure study, which included multiple stimuli intended to induce seizures, yet none were reported, and her EEG readings were all normal. AR 511. Additionally, an MRI of her brain just prior to admission to the seizure study was within normal limits. *Id.*

The ALJ also found that Ms. Pedersen's chronic substance abuse undermined her credibility. AR 20. Inconsistent statements about substance use can be used to reject a claimant's credibility. *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). The record has multiple instances of inconsistent reporting about drug use. She testified that she was sober since November 15, 2012, AR 54, yet she tested positive for marijuana and methamphetamine on multiple occasions

after that date, as well as was known to consume alcohol on various instance, AR 327, 342, 380, 381, 384, 407, 545-46, 648.

Additionally, the ALJ noted an overall pattern of improvement in Ms. Pedersen's mental health. AR 21. Despite the significant setback resulting from the death of her mother, AR 383, the record supports the ALJ's finding of gradual improvement, even despite Ms. Pedersen's continued substance abuse. AR 364, 397-99, 459, 469, 491. By March 2015, Ms. Pedersen herself indicated that she had not experienced depressive symptoms over the previous two weeks. AR 445-46.

The ALJ also found that Ms. Pedersen's activities of daily living were inconsistent with disability. AR 22. Ms. Pedersen goes to the tanning salon at least twice per week. AR 57. She is able to shop for groceries, perform household chores, visit her children, and do crossword puzzles. AR 56-58. The Court finds the ALJ's interpretation rational and accepts it. *See Rollins*, 261 F.3d at 857.

Finally, the ALJ found that Ms. Pedersen's poor work history undermined her overall credibility. The ALJ noted to her lack of income for a ten-year period and extremely low earnings prior. AR 22, 162-64, 166-67. A longstanding pattern of poor work history may be considered in a credibility determination. *Thomas*, 278 F.3d at 959.

In sum, the ALJ provided numerous specific, clear, and convincing reasons supported by the record for her decision to reject Ms. Pedersen's credibility. The Court finds no error.

## VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 14,** is **GRANTED.**

3. The District Court Executive is directed to enter judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 3rd day of April, 2018.

<u>s/Robert H. Whaley</u>
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 19